IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BNSF RAILWAY COMPANY,** | ) | Case No. 4:11-cv- 03076 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **AMENDED COMPLAINT** |
| **L.B. FOSTER COMPANY,** | ) | **(**JURY TRIAL DEMANDED**)** |
| Defendant. | ) | |

COMES NOW plaintiff BNSF Railway Company (hereinafter "BNSF"), pursuant to Fed. R. Civ. P. 15(a)(1)(B), and for its Amended Complaint against defendant, L.B. Foster Company (hereinafter "Foster") states and alleges as follows:

## PARTIES

1. BNSF is a Delaware corporation with its principal place of business located in Fort Worth, Texas, doing business as a common carrier of freight by rail and engaged in interstate commerce.

2. For administrative purposes, BNSF is divided into fourteen national operating divisions, one of which is located in the State of Nebraska (BNSF does not have an operating division in the State of South Dakota). Since its existence, BNSF has conducted a substantial amount of its business in Nebraska. Annually, BNSF moves more than 2 million carloads of freight in and throughout Nebraska. BNSF owns approximately 1,600 miles of railroad track in Nebraska and employs approximately 4,000 Nebraska residents in connection with its Nebraska operations, making it one of the State's largest employers. In addition, BNSF owns and operates major rail yards in the Nebraska cities of Alliance, McCook, Lincoln, and Omaha. Alliance is the home of BNSF's largest maintenance facility, and BNSF's premier repair facility is located in

Lincoln. BNSF has also established a Foundation which, in 2009, contributed nearly $240,000 to Nebraska-based charities.

3. Foster is a Pennsylvania corporation engaged in the manufacture, sale and distribution of rail, construction and tubular products with its principal office address at 415 Holiday Drive, Pittsburgh, Pennsylvania. It is registered and authorized to do business in the State of Nebraska with a local registered agent for service of process at CSC-Lawyers Incorporating Service Company, Suite 1900, 233 South 13th Street, Lincoln, Nebraska.

4. Foster owns real and personal property in the State of Nebraska including without limitation plant facilities of a Foster wholly-owned subsidiary, CXT Concrete Ties located in Grand Island, Nebraska. It has in the past and continues to supply BNSF with products and technical support services in the State of Nebraska. Foster has purposefully availed itself of the rail transportation products and services market created by common carriers doing business by rail in the State of Nebraska, including BNSF. Upon information and belief, Foster has never been registered to do business in South Dakota.

## JURISDICTION, VENUE AND APPLICABLE LAW

5. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) for the reason defendant Foster is deemed to reside in this District inasmuch as it is subject to personal jurisdiction in the State of Nebraska.

7. The substantive law of the State of Nebraska applies to all claims alleged herein.

## **GENERAL ALLEGATIONS**

8. Upon information and belief, Foster researched, developed, designed, tested, manufactured, assembled, inspected, specified, warranted, sold, issued instructions or advisories related to, and supplied, among other rail products, a device commonly known as an "insulated joint" for domestic and international railway applications including without limitation specialty insulated joints, polyencapsulated insulated joints, bonded insulated joint plug assemblies and bonded insulated joint kits.

9. Foster expressly warranted its insulated joints as compliant with all American Railway Engineering & Maintenance-of-Way Association ("AREMA") specifications and those of the railroads and transit systems it conducts business with, including BNSF. Foster further warranted that its insulated joints were designed, developed, and manufactured in accordance the specific standards and requirements of ISO 9001:2000 ("ISO"), which is a quality management system established and developed by the International Organization for Standardization. As an ISO certified manufacturer of insulated joints, Foster was required, among other things, to identify BNSF's requirements, specifications and expectations with respect to insulated joints, to produce insulated joints which conformed therewith, and to monitor and measure BNSF's satisfaction with said products. By warranting itself as an ISO certified manufacturer of insulated joints, ISO expressly warranted, among other things, that its insulated joints would meet BNSF's expectations with respect to longevity, specifically, that the rail joints would last at least ten years.

10. In or around June of 2002, an employee in BNSF's Nebraska division placed an order with Foster for the purchase of an insulated joint to be delivered to BNSF in Nebraska. Subsequently, Foster sold and delivered the insulated joint to BNSF in Nebraska. BNSF purchased the insulated joint from Foster with the expectation that the joint would last as long as the rail to which it would be affixed, or at least ten years. Foster was fully aware of BNSF's expectations in this regard at the time it sold and shipped the insulated joint to BNSF.

11. The insulated joint which Foster sold to BNSF contained latent defects that were not apparent upon reasonable external inspection by BNSF.

12. In or around June of 2003, the defective insulated joint was installed on track owned and operated by BNSF at or near the town of Ardmore, South Dakota. Ardmore is a virtual ghost town located in the extreme southwest corner of South Dakota. Ardmore lies approximately one mile north of the Nebraska border.

13. On or about January 22, 2008, BNSF Train CCDMKCL003 consisting of 122 loaded cars and two locomotives operated by a Nebraska-based crew, departed Edgemont, South Dakota bound for Alliance, Nebraska. Edgemont is located approximately 27 miles northwest of Ardmore. BNSF owns approximately 50 miles of track in the southwest portion of South Dakota. While passing over Foster's defective insulated joint, the BNSF train derailed.

14. The insulated joint was subsequently inspected on two separate occasions as part of an investigation concerning the cause of the aforementioned derailment. It was determined in the course of these inspections that the insulated joint was defective in that it was not manufactured in accordance with AREMA or BNSF

specifications, specifically, those specifications relating to the drilling, location, and composition of the insulated joint's bolt holes. BNSF did not discover and could not have reasonably discovered the defective nature of the insulated joint until after the derailment.

15.     As a proximate result of the failure of the defective insulated joint and the aforementioned derailment, BNSF has incurred damages to its property, including its rolling stock, vehicles and equipment, to its locomotives, railcars, lading, signal equipment, rails, ties, and other track structures, and BNSF has incurred material and labor costs for cleanup and repairs, and it has suffered business interruption costs, including without limitation, train delay and train crew charges, all at a cost to BNSF in excess of One Million Dollars ($1,000,000.00).

16.     BNSF's operations in Nebraska were directly impacted by the derailment. BNSF employees from Nebraska provided the labor and material related to the post-derailment cleanup effort. Consequently, all of the costs associated with the cleanup, which totaled approximately $110,000, were charged to BNSF facilities in Nebraska.

## COUNT I:  NEGLIGENCE

17.     Restates and realleges the preceding paragraphs of the Complaint as if fully set out herein.

18.     Foster was negligent in failing to ensure that the insulated joint was safe for the use for which it was manufactured, assembled, supplied, distributed, sold or otherwise placed into interstate commerce and Foster breached its duty of reasonable care owed to BNSF by failing to properly and adequately research, develop, design,

test, manufacture, assemble, inspect, specify, instruct, advise, warrant, warn, maintain, recall and correct defects in the insulated joint.

19. Foster was also negligent in the following particulars:

    a. in failing to properly design and test the insulated joint;

    b. in failing to properly manufacture and assemble the insulated joint;

    c. in failing to conduct appropriate and effective quality control of the insulated joint as required under the ISO;

    d. in failing to supply an insulated joint to BNSF consistent with AREMA and industry specifications and standards;

    e. in failing to supply an insulated joint to BNSF consistent with BNSF specifications and standards for insulated joints;

    f. in failing to properly and sufficiently warn BNSF of hazards associated with the intended use of the insulated joint; and

    g. in failing to take reasonable and appropriate measures to ensure that BNSF was supplied with an insulated joint free of defect and safe for its intended use.

20. The negligence of Foster was a proximate cause of the derailment and consequent damages incurred by BNSF as more fully described in paragraphs 13 and 15 hereinabove.

WHEREFORE plaintiff BNSF respectfully requests that judgment be entered against defendant Foster on Count I of its Complaint in the full amount of its damages as established by the evidence which will be in excess of $1,000,000.00 plus pre-judgment and other interest, costs and such other relief as this Court deems reasonable and just.

## COUNT II: NEGLIGENT MISREPRESENTATION

21. Restates and re-alleges paragraphs 1 through 16 of the Complaint as if fully set out herein.

22. Foster, acting through its employees, agents or representatives, failed to exercise reasonable care or competence in obtaining, managing and communicating accurate and truthful information related to its insulated joints and thereby misrepresented facts concerning their use, quality, specifications and performance characteristics.

23. Foster made the aforementioned misrepresentations of fact for the purpose of inducing BNSF to rely upon said misrepresentations and purchase insulated joints.

24. BNSF reasonably and justifiably relied upon the facts misrepresented by Foster related to the insulated joint and purchased a defective insulated joint to its ultimate detriment. The derailment more fully described in paragraphs 13 and 15 hereinabove was a direct and proximate result of said misrepresentations of facts by Foster.

25. As a direct and proximate result of the negligent misrepresentations of facts by Foster, BNSF has incurred damages as more fully described in paragraph 15 hereinabove.

WHEREFORE, plaintiff BNSF respectfully requests that judgment be entered against defendant Foster on Count II of its Complaint in the full amount of its damages as established by the evidence which will be in excess of $1,000,000.00 plus pre-judgment and other interest, costs and such other relief as this Court deems reasonable and just.

## COUNT III: STRICT LIABILITY

26. Restates and re-alleges paragraphs 1 through 16 of the Complaint as if fully set out herein.

27. At the time Foster sold the insulated joint to BNSF, the insulated joint was in a defective condition, unreasonably dangerous to BNSF's personnel, property and premises when put to its intended use and Foster knew or in the exercise of reasonable care should have known that the insulated joint would be used by BNSF without an inspection for such latent defects.

28. The defective insulated joint was expected to and did reach BNSF without substantial change in the condition in which it was when it was supplied, distributed or otherwise placed in interstate commerce by Foster.

29. BNSF used the insulated joint in a manner reasonably anticipated by Foster and for the general purpose for which it was designed, manufactured and sold.

30. As a result of said defective condition, the insulated joint failed resulting in the derailment more fully described in paragraph 13 hereinabove.

31. BNSF's damages as more fully described in paragraph 15 hereinabove were directly and proximately caused by this defective condition that existed when Foster sold the insulated joint to BNSF.

WHEREFORE plaintiff BNSF respectfully requests that judgment be entered against defendant Foster on Count III of its Complaint in the full amount of its damages as established by the evidence which will be in excess of $1,000,000.00 plus pre-judgment and other interest, costs and such other relief as this Court deems reasonable and just.

### COUNT IV: BREACH OF EXPRESS WARRANTIES

32. Restates and re-alleges paragraphs 1 through 16 of the Complaint as if fully set out herein.

33. Foster sold a defective insulated joint to BNSF for use on its line.

34. In connection with and as part of that sale, Foster expressly warranted through affirmations of fact, promises and/or descriptions that the insulated joint was designed, developed, and manufactured in accordance with AREMA and BNSF specifications and in strict compliance with all applicable portions of the ISO. By virtue of holding itself out as ISO certified, Foster further explicitly warranted that the insulated joint would remain free from defects for the life of BNSF's track or at least 10 years and that it would have properties and durability sufficient and appropriate for its intended use.

35. BNSF reasonably and justifiably relied upon the aforesaid express warranties and purchased the defective insulated joint to its ultimate detriment.

36. The insulated joint did not conform to the aforesaid express warranties thereby constituting a breach of such express warranties.

37. Foster's breach of express warranties as described hereinabove was a direct and proximate cause of the derailment and the consequent damages incurred by BNSF as more fully described in paragraphs 13 and 15 hereinabove.

38. BNSF provided Foster with timely notice of its breach of express warranties.

WHEREFORE plaintiff BNSF respectfully requests that judgment be entered against defendant Foster on Count IV of its Complaint in the full amount of its damages as established by the evidence which will be in excess of $1,000,000.00 plus pre-judgment and other interest, costs and such other relief as this Court deems reasonable and just.

## COUNT V:  FRAUDULENT MISREPRESENTATION

39. Restates and re-alleges paragraphs 1 through 16 of the Complaint as if fully set out herein.

40. Prior to selling the insulated joint at issue, Foster represented to BNSF that the insulated joint was compliant with all AREMA and BNSF specifications and that it was designed, developed, and manufactured in accordance with all applicable portions of the ISO.

41. Each of those representations was false and Foster knew they were false at the time it made such representations.

42. Foster made these representations with the intention that BNSF would rely on them.

43. BNSF relied on Foster's representations by purchasing the defective insulated joint.

44. As a direct and proximate cause of BNSF's purchase of the defective insulated joint, BNSF incurred damages as more specifically described in paragraph 15 hereinabove.

WHEREFORE plaintiff BNSF respectfully requests that judgment be entered against defendant Foster on Count V of its Complaint in the full amount of its damages as established by the evidence which will be in excess of $1,000,000.00 plus pre-judgment and other interest, costs and such other relief as this Court deems reasonable and just.

## COUNT VI: FRAUDULENT CONCEALMENT

45. Restates and re-alleges paragraphs 1 through 16 of the Complaint as if fully set out herein.

46. Foster had a duty to BNSF to disclose that the insulated joint at issue was not compliant with all AREMA and BNSF specifications and that it was not designed, developed, and manufactured in accordance with all applicable portions of the ISO. Foster, however, fraudulently concealed this fact from BNSF.

47. The fact that the insulated joint was not compliant with all AREMA and BNSF specifications and that it was not designed, developed, and manufactured in accordance with all applicable portions of the ISO was not within BNSF's reasonably diligent attention, observation, or judgment. Indeed, BNSF could not have discovered such facts upon a reasonable external examination of the insulated joint.

48. Foster concealed from BNSF the fact that the insulated joint was not compliant with all AREMA and BNSF specifications and that it was not designed, developed, and manufactured in accordance with all applicable portions of the ISO with the intention that BNSF purchase the insulated joint for use on its rail.

49. In reliance upon Foster's representations concerning the quality and characteristics of the insulated joint, BNSF purchased the insulated joint and subsequently arranged to have it installed on its track in Ardmore, South Dakota.

50. As a direct and proximate result of purchasing the defective insulated joint, BNSF incurred damages as more specifically described in paragraph 15 hereinabove.

WHEREFORE plaintiff BNSF respectfully requests that judgment be entered against defendant Foster on Count VI of its Complaint in the full amount of its damages

as established by the evidence which will be in excess of $1,000,000.00 plus pre-judgment and other interest, costs and such other relief as this Court deems reasonable and just.

### REQUEST FOR JURY TRIAL and DESIGNATION OF PLACE FOR TRIAL

Plaintiff demands trial to a jury on all claims for relief herein and further requests that trial be held in Lincoln, Nebraska.

Dated this 5th day of August, 2011.

          BNSF RAILWAY COMPANY, Plaintiff

     By: s/*Thomas C. Sattler*
       Thomas C. Sattler, #16363
       Brian J. Adams, #22619
       WOLFE, SNOWDEN, HURD,
        LUERS & AHL, LLP
       Wells Fargo Center
       1248 "O" Street, Suite 800
       Lincoln, NE 68508
       Tel: (402) 474-1507
       Fax: (402) 474-3170
       Email: tsattler@wolfesnowden.com
           badams@wolfesnowden.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of August, 2011, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which sent notification of such filing to the following:

 Brian D. Nolan
 Douglas R. Novotny
 Nolan, Olson & Stryker, P.C., L.L.O.
 Two Old Mill, Suite 240
 10855 West Dodge Road
 Omaha, NE 68154
 (402) 932-5126
 BNolan@NolanOlson.com
 DNovotny@NolanOlson.com

          s/*Thomas C. Sattler*
          Thomas C. Sattler